

**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

March 29, 2021

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

**VIA ECF**

Magistrate Judge Lois Bloom
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re: *Garcia Chantez, et al. v. Victory Hospitality Managementt LLC, et al.*
> <u>Civil Action No. 20-cv-2590 (LB)</u>

Dear Judge Bloom:

This office represents named plaintiffs Maria Garcia Chantez and Aurora Chavez Jimenez (the "Named Plaintiffs"), opt-in plaintiffs Elsa Ayala, Alondra Barrera Chavez, Katy Barrera Chavez, Marcela Farciert and Martha Aleman (the "Opt-in Plaintiffs") and Fidela Miranda, Gloria Sainz and Maria Ines Ayala (the "NYLL Employees" and, with the Named Plaintiffs and Opt-in Plaintiffs, the "Plaintiffs"). We write, jointly with counsel for Victory Hospitality Management LLC d/b/a Ramada by Wyndham Hotel Staten Island, Victory Hospitality LLC, President Hospitality LLC d/b/a Super 8 by Wyndham Brooklyn Park Slope, Shashin S. Gandhi (sued herein as Sashin S. Gandhi) and Rinal C. Gandhi (collectively, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and the Court's December 16, 2020 Order. Counsel for the parties respectfully submit that the negotiated Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.     Procedural History and Plaintiffs' Allegations**

The Named Plaintiffs commenced this action by filing their Class & Collective Action Complaint in the Eastern District of New York ("EDNY") on June 10, 2020 (Dkt. No. 1). Subsequently, the Opt-in Plaintiffs joined the lawsuit by filing Consent to Become a Party Plaintiff forms. (Dkt. Nos. 14-16, 19, 20). During the pendency of this Action, the NYLL Employees also retained Plaintiffs' counsel to represent them in this Action. (Pelton Aff. ¶ 4). As these individuals worked for Defendants during the six (6) year New York Labor Law ("NYLL") limitations period, but not during the three (3) year Fair Labor Standards Act ("FLSA") limitations period, the parties agreed that Plaintiffs would include the NYLL Employees in mediation discussions without engaging in formal motion practice to amend the Complaint to add these individuals as parties. (*Id.*)

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

Defendants filed their Answer on September 4, 2020, denying all material allegations. (Dkt. No. 12).

The Court issued an FLSA discovery and mediation scheduling order on September 14, 2020, setting deadlines for the exchange of certain documents and written materials as well as early mediation. (Dkt. No. 13). Plaintiffs exchanged initial disclosures, damages, and documents pertaining to the Named Plaintiffs in October 2020 and issued revised disclosures and damages in January 2021 pertaining to the Opt-in Plaintiffs and NYLL Employees. (Pelton Aff. ¶ 6). Defendants exchanged time and payroll records for certain Plaintiffs as well as documents pertaining to the ownership of some of the hotels named in the Complaint. (*Id.*) During this period, the Parties held numerous discussions pertaining to Plaintiffs' claims and the facts of Plaintiffs' employment with Defendants. (*Id.*)

On February 18, 2021, the Parties participated in a mediation before Patrick McKenna, Esq., at which time they reached a settlement in principle. (Pelton Aff. ¶ 7). Over the next several weeks, the Parties finalized the terms of the settlement and drafted and executed the Settlement Agreement attached hereto. (*Id.*) As per the Declaration of Belinda Herazo, attached hereto as **Exhibit B**, the Settlement Agreement as well as the mediation proceedings have been translated into Spanish for each of the Plaintiffs. (*Id.*)

## II.     The Settlement Accounts for Litigation Risk

Plaintiffs worked as housekeepers, laundry employees, kitchen employees and maintenance employees at Ramada by Wyndham Staten Island Hotel, Super 8 by Wyndham Brooklyn Park Slope, Best Western Plus Brooklyn Bay Hotel, and Clarion Hotel on Park Avenue in Manhattan. Plaintiffs alleged that particularly when they worked off-the-books, they were consistently paid below the minimum wage and paid straight-time rates for hours worked over forty (40) per week, and that Defendants failed to pay spread-of-hours premiums, failed to accurately track employees' hours worked, and failed to provide them with accurate wage statements, or often no wage statements at all, and with wage notices.

Specifically, Plaintiffs alleged that the weekly hours shown on the time records are inaccurate and show fewer hours, particularly overtime hours, than they actually worked, due to Defendants' practices of manipulating the pay periods shown on records and requiring Plaintiffs to punch out once they had worked eight (8) hours on a given shift, even though they were required to continue working for several more hours. Plaintiffs also allege that Defendants had a practice of paying off-the-books employees at rates below the minimum wage. Finally, Plaintiffs allege that both on-the-books employees, who were typically paid their hours worked up to forty (40) per week by check, and off-the-books employees were paid for hours worked beyond forty (40) per week at their regular hourly rates and in cash.

Throughout the litigation, the Parties have disputed several issues of fact and law regarding Plaintiffs' employment, Plaintiffs' claims, and Defendants' ownership of the hotels named in the Complaint. Due to the fact that two of the Plaintiffs stopped working for Defendants within six (6)

years ago, but over three (3) years ago, Defendants maintain that they cannot join the Action at this time, as they lack FLSA claims and Defendants would likely not consent to amendment of the complaint to add them as Plaintiffs. Defendants also claim that one of the Plaintiffs did not work for any of the Defendants or the hotels they owned during the relevant time period, while Plaintiffs assert that this individual worked for a hotel that is owned by the father of Defendant S. Gandhi, and that she was sent to the Ramada Hotel on Staten Island to cover shifts for absent employees. Defendants have produced time and payroll records for on-the-books employees indicating that Defendants paid the minimum wage for all hours shown and that these individuals did not work overtime.

Plaintiffs allege that Defendants' produced records are inaccurate and incomplete, especially as to off-the-books employees and that they could testify to their off-the-clock hours and overtime hours worked that were compensated at straight-time rates. While Plaintiffs believe that a factfinder would credit their testimony over the Defendants, Plaintiffs recognize that existing timekeeping and payroll documents for on-the-books employees and some time and pay records for off-the-books employees, could potentially limit the amount of damages Plaintiffs could recover at trial regarding their minimum wage, overtime and spread-of-hours claims if a factfinder credited Defendants' testimony and records in their entirety.

In preparation for the February 2021 mediation, Plaintiffs created an individual damages analysis based on Plaintiffs' best estimates of the hours worked and the wages paid, as well as the hourly rates shown in Defendants' records. Plaintiffs' damages analysis calculated $118,966.00 in unpaid wage damages, consisting of $25,797.55 in unpaid minimum wages, $84,873.80 in unpaid overtime premiums, and $8,294.64 in unpaid spread of hours premiums. Plaintiffs further calculated $118,966.00 in liquidated damages, $100,000.00 in wage notice and wage statement damages, and $46,501.99 in prejudgment interest as of the mediation date, February 18, 2021, for a grand total of $384,433.99. Although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the possibility that they could receive much lower damages, or nothing at all. As mentioned above, the Parties have several disputes as to the facts and Plaintiffs' claims. Accordingly, Plaintiffs prefer to settle now, on an individual basis, for an amount that they would be guaranteed to receive under the terms of the settlement.

The parties believe that the settlement amount (i.e., $150,000.00) is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages as well as the risks associated with proceeding to trial, particularly as the settlement exceeds Plaintiffs' calculations for all unpaid wages owed.

**III.    Settlement Terms**

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $150,000.00 (the "Settlement Amount"). Of the Settlement Amount, $50,852.25 is payable to Plaintiffs' counsel (consisting of $1,278.38 in expense reimbursements and $49,573.87 in attorneys' fees). The remaining $99,147.75 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The agreement includes a mutual non-disparagement provision between Plaintiffs and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiffs and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.*, No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.*, No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC*, No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving

Magistrate Judge Lois Bloom
FLSA Settlement Fairness Letter
Page **5** of **7**

        non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

        The mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable attorneys' fees in the event that they prevail.

### IV.    Plaintiffs' Attorney's Fees and Expenses

        As set forth in the Affidavit of Brent E. Pelton, Esq., as of March 29, 2021, Plaintiffs' counsel has spent more than 169 hours in prosecuting and settling this matter, resulting in a lodestar of $41,508.42. *See* Pelton Aff. Ex. C. Plaintiffs' counsel has spent $1,278.38 in actual litigation costs. *Id.* at Ex. D. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $49,573.87) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which represents a modest 1.2 times lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreements.

        The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern District of New York. In fact, the same rates have been approved in connection with a recent wage and hour default judgment in the Eastern District. *See, e.g., Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (Providing that rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

        For the purposes of this settlement, Defendants take no position with respect to counsel's request for attorneys' fees and leave to the Court's determination provided that such attorneys' fees and costs are solely paid out of the Settlement Amount in accordance with the Settlement Agreement.

### V.    The Parties Believe that the Settlement Is Fair and Reasonable

        An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks, supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is

"whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

  Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations, including discussions and exchange of damages and documents that took place over the course of several months. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs, including records produced by Defendants and issues of disputed ownership of locations where certain Plaintiffs worked. Due to the employment dates of some of the Plaintiffs, as well as the several disputed issues of fact, the parties would likely need to engage in substantial motion practice, including a motion to amend and class and collective certification, as well as extensive discovery, including written discovery and numerous depositions, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

*   *   *   *   *

  As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

  We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

| | |
|---|---|
| By: */s  Brent E. Pelton, Esq.* | By: */s Jasmine Y. Patel, Esq.* |
| Brent E. Pelton, Esq. | Jasmine Y. Patel, Esq. |
| Taylor B. Graham, Esq. | **FRANKLIN, GRINGER & COHEN P.C.** |
| **PELTON GRAHAM LLC** | 666 Old Country Road, Suite 202 |
| 111 Broadway, Suite 1503 | Garden City, New York 11530 |
| New York, New York 10006 | |

www.PeltonGraham.com

Magistrate Judge Lois Bloom
FLSA Settlement Fairness Letter
Page **7** of **7**

*Attorney for Defendants*

*Attorneys for Plaintiffs*

cc:     All counsel (via ECF)

www.PeltonGraham.com